United States District Court
Southern District of Texas
**ENTERED**
June 18, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| John Tauriac, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 4:24-cv-04290 |
| v. | § | |
| | § | |
| Staffing the Universe, LLC, | § | |
| Schlumberger Technology | § | |
| Corporation, Helix Energy | § | |
| Solutions Group, Inc., and Talos | § | |
| Energy LLC, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM AND RECOMMENDATION

This suit stems from an alleged injury sustained by Plaintiff John Tauriac while on board the offshore drilling vessel *Q5000* in the Gulf of Mexico. Dkt. 1-1. Defendant Staffing the Universe, LLC (properly named Industrial Staffing Services, LLC, hereinafter "ISS") filed a motion to dismiss pursuant to Rule 12(b)(2). Dkt. 7. Because Tauriac failed to respond, the motion to dismiss is deemed unopposed. *See* S.D. Tex. L.R. 7.4

Separately, Tauriac filed a motion to remand all his claims. Dkt. 12. ISS filed a response, Dkt. 19, which was joined in principal part by Defendants Schlumberger Technology Corporation and Helix Energy Solutions Group, Inc. (collectively with ISS, "Defendants"), Dkt. 21. Tauriac also replied. Dkt. 22.

After carefully considering the parties' briefing, the record, and the applicable law, it is recommended that (1) ISS's motion to dismiss (Dkt. 7) for lack of personal jurisdiction be granted; and (2) Tauriac's motion to remand (Dkt. 12) be granted in part and denied in part.

## Background

Plaintiff John Tauriac was injured while working on a drilling vessel, the *Q5000*. Dkt. 1-1 at 2. He filed suit in state court on September 24, 2024, alleging Jones Act negligence against Defendants Schlumberger, Helix, ISS, and another entity, Talos Energy, LLC, Dkt. 1-1 at 5-7; and general maritime claims for (1) unseaworthiness against Helix, *id.* at 7, and (2) failure to pay maintenance and cure against ISS, *id.* at 8. ISS removed the case to this court on November 4, 2024, asserting federal question jurisdiction under the Outer Continental Shelf Lands Act ("OCSLA"). Dkt. 1 at 1-2; *see* 43 U.S.C. § 1349(b).

A week later, ISS filed a motion to dismiss under Fed. R. Civ. P. 12(b)(2), asserting lack of personal jurisdiction. Dkt. 7. Tauriac did not respond.

On December 3, 2024, Tauriac filed a motion to remand, Dkt. 12, which ISS opposed, Dkt. 19. ISS's brief was joined, in part, by Schlumberger and Helix. Dkt. 21. Tauriac replied, Dkt. 22, and ISS filed a sur-reply.[1] Dkt. 29, 30. The motions are ripe for resolution.

---

[1] Talos Energy LLC appeared later in the suit. Dkt. 31.

## Analysis

### I. The Court resolves ISS's straightforward personal jurisdiction challenge before reaching Tauriac's motion to remand.

The parties' competing motions raise the question of which issue should be resolved first. ISS argues that its motion to dismiss for lack of personal jurisdiction should take priority. *See* Dkt. 19 at 8-9. Although Tauriac asserts his motion to remand should go first, he concedes that the Court has discretion to decide the appropriate order. *See* Dkt. 22 at 7.

In general, "federal courts address subject-matter jurisdiction at the outset" and reach other issues first "only where the jurisdictional issue is 'difficult to determine' and the other grounds are relatively 'less burdensome.'" *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018) (citing *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007); *Ruhrgas AG v. Marathon Oil*, 526 U.S. 574, 587-88 (1999)). Courts facing multiple grounds for dismissal should consider "the complexity of subject-matter jurisdiction issues raised by the case, as well as concerns of federalism, and of judicial economy and restraint in determining whether to dismiss claims due to a lack of personal jurisdiction before considering challenges to its subject-matter jurisdiction." *See id.* (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 213 (5th Cir. 2000)).

"A federal court may consider personal jurisdiction issues prior to addressing a motion to remand where 'federal intrusion into state courts' authority is minimized.'" *Alpine View*, 205 F.3d at 214 (quoting *Ruhrgas*, 526 U.S. at 587). This is the case when Texas law applies, as Texas's long-arm statute extends "personal jurisdiction over a foreign defendant to the fullest extent allowed by the federal constitution." *Id.* (citing *Wilson v. Belin*, 20 F.3d 644, 647 & n.1 (5th Cir. 1994)); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042. As a result, a federal court sitting in Texas does not face "difficult questions of state law" when determining personal jurisdiction. *See Alpine View*, 205 F.3d at 214 (quoting *Ruhrgas*, 526 U.S. at 586).

ISS's personal jurisdiction challenge poses no difficult state-law questions. The facts are uncontroverted, and Tauriac's failure to respond means that ISS's motion to dismiss is deemed unopposed. Judicial economy favors resolving that motion first because it is straightforward and could result in ISS's complete dismissal. *See Alpine View*, 205 F.3d at 214 (affirming reliance on judicial economy as justification for resolving personal jurisdiction ahead of subject-matter jurisdiction). The Court will address personal jurisdiction before reaching the motion to remand.

## II.    ISS's Rule 12(b)(2) motion to dismiss

In its motion to dismiss, ISS argues that there is no basis for personal jurisdiction, whether general or specific.  Dkt. 7 at 3-6.  ISS maintains that it is not "at home" in Texas and Tauriac's claims do not arise out of ISS's contacts with Texas.  *See id*.  As already noted, ISS's motion is deemed unopposed due to Tauriac's failure to respond.  *See* S.D. Tex. L.R. 7.4.

### A.    Legal standard: Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction.  When faced with a Rule 12(b)(2) motion, "the plaintiff bears the burden to identify facts that demonstrate a prima facie case of jurisdiction." *Bulkley & Assocs., L.L.C. v. Dep't of Indus. Relations,* 1 F.4th 346, 350 (5th Cir. 2021); *see also Herman v. Cataphora, Inc.*, 730 F.3d 460, 464 (5th Cir. 2013).  Courts may consider "affidavits, interrogatories, depositions, oral testimony, or any combination" thereof to determine if the plaintiff made a prima facie showing.  *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quotation omitted).  The court accepts as true "the nonconclusory, uncontroverted allegations in the plaintiff's complaint" and "resolve[s] conflicts between the facts contained in the parties' affidavits ... in the plaintiff's favor." *Bulkley & Assocs.,* 1 F.4th at 350 (quotation omitted).  But "the prima-facie-case requirement does not require the court to credit conclusory allegations,

even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

**B.    Tauriac failed to show that personal jurisdiction is proper over ISS.**

Uncontroverted facts negate the existence of personal jurisdiction over ISS.  The bare allegations in Tauriac's petition fail to meet his burden.

A federal court can exercise personal jurisdiction over a nonresident defendant only to the extent authorized by the forum state's laws and consistent with federal due process.  *See Sangha*, 882 F.3d at 101 (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.* (citation omitted).   To satisfy due process, the defendant must have "minimum contacts with the forum state (*i.e.* that the defendant has purposely availed himself of the privilege of conducting activities within the forum state) and that exercising jurisdiction is consistent with traditional notions of fair play and substantial justice." *Id.* (quotation omitted).

There are two types of personal jurisdiction: general and specific. Neither is satisfied here.

General jurisdiction permits a federal court to "hear *any* claim against that defendant, even if all the incidents underlying the claim occurred" outside

the forum state. *See Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 582 U.S. 255, 262 (2017) (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "[O]nly a limited set of affiliations" will suffice to establish general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). In particular, a corporation's or other business entity's "affiliations with the State" must be "so continuous and systematic as to render [it] essentially at home in the forum State." *See id.* at 138-39 (quotation omitted); *see also Frank v. PNK (Lake Charles) L.L.C.*, 947 F.3d 331, 337-38 (5th Cir. 2020) (same test for a defendant LLC).

General jurisdiction is a non-starter. ISS is a New Jersey limited liability corporation with its principal place of business in New Jersey, and it has no offices in Texas. *See* Dkt. 7-1 at 1 (Declaration of Jourdan Block, ISS Chief Operations Officer); *see also* Dkt. 1-1 at 4 (describing ISS as "a foreign limited liability company" with a registered agent in Florida). According to the petition, ISS "does a substantial amount of business in the state of Texas and for Texas based entities." Dkt. 1-1 at 4. But that "vague and overgeneralized" assertion, devoid of any indication about "the extent, duration, or frequency" of ISS's Texas contacts, falls well short of showing that those contacts are "'continuous and systematic' enough to support general jurisdiction." *See Sangha*, 882 F.3d at 102 (citing *Goodyear*, 564 U.S. at 919; *Johnston*, 523 F.3d at 609) (rejecting uncontroverted but conclusory allegations of forum contacts);

*see also Panda Brandywine*, 253 F.3d at 869 (the court is not required "to credit conclusory allegations, even if uncontroverted").

The only alternative is specific jurisdiction, which hinges on the relationship between the claims and the defendant's contacts with the forum state. *See Walder v. Fiore*, 571 U.S. 277, 283-84 (2014). "Specific jurisdiction applies when a non-resident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539-40 (5th Cir. 2019) (quoting *Panda Brandywine*, 253 F.3d at 868). "The non-resident's purposeful availment must be such that the defendant should reasonably anticipate being haled into court in the forum state." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir. 1993) (quotation omitted).

Tauriac has not made a prima facie case for specific jurisdiction. As ISS observes, Tauriac alleges no relevant conduct or contacts in Texas—let alone the "purposeful" contact required to support a finding of specific jurisdiction. *See Sangha*, 882 F.3d at 103 (citing *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (alleged contacts made by interacting with others "affiliated with the State" are insufficient for specific jurisdiction)). There is no indication that the allegations in this suit arise out of or relate to ISS's unspecified business in Texas. Although the petition asserts that ISS was Tauriac's employer, it

admits that the work occurred offshore.  *See* Dkt. 1-1 at 4-5.  ISS's evidence also reflects that Tauriac was not hired to perform work in Texas and received his training in Oklahoma, not Texas.  *See* Dkt. 7-1 at 1.

The record confirms that there is no basis for personal jurisdiction over ISS.  This Court should grant ISS's Rule 12(b)(2) motion to dismiss.

### III.  <u>Tauriac's motion to remand</u>

As his basis for remand, Tauriac maintains that this suit was improperly removed because it seeks recovery under the Jones Act for injuries sustained aboard an offshore rig.  *See* Dkt. 12 at 9-12.  Tauriac contends that he has not improperly pleaded his Jones Act seaman-status to frustrate federal jurisdiction.  *See id.* at 12-18.  And even if OCSLA provides a basis for federal jurisdiction over some of his claims, Tauriac argues that his Jones Act claims should be severed and remanded.  *See id.* at 18-19.  Tauriac also asserts, solely in his reply brief, that ISS's removal was procedurally improper because not all defendants consented.  *See* Dkt. 22 at 14-16.

Schlumberger and Helix joined ISS in opposing the request to remand. *See* Dkt. 21 (incorporating and joining Dkt. 19, except for ISS's arguments against personal jurisdiction).    Schlumberger and Helix—which, in this section, will be referred to as "Defendants"—argue that OCSLA supplies federal jurisdiction because the operation underlying the suit occurred on the Outer Continental Shelf ("OCS").  *See* Dkt. 19 at 9-10.  Defendants also contend

that Tauriac's Jones Act claims should be disregarded as improperly pleaded. *See id.* at 10-13. As an alternative, Defendants argue that even if the Jones Act claims are severed and remanded, this Court should retain jurisdiction over Tauriac's maritime-law claims under OCSLA. *See id.* at 14-15. Defendants also assert (in a sur-reply) that Tauriac waived his argument regarding lack of consent for removal. *See* Dkt. 30 at 3-4.

As explained below, this is a hybrid suit implicating *both* the Jones Act and OCSLA. In such a case, the non-removable Jones Act claims should be severed and remanded, but pursuant to OCSLA, this Court should retain jurisdiction over Tauriac's general maritime claims.

### A. Legal standard for removal and remand

A defendant can remove, to federal court, a state-court action that could originally have been filed in federal court. 28 U.S.C. § 1441(a). Federal courts, in turn, are authorized to hear cases that either (1) involve questions of federal law, 28 U.S.C. § 1331, or (2) "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States," *id.* § 1332(a)(1).

The removal statute must "be strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand." *In re Hot-Hed, Inc.*, 477 F.3d 320, 323 (5th Cir. 2007). "The jurisdictional facts that support removal must be judged at the time of the removal." *Gebbia v. Wal-Mart*

10

*Stores, Inc.*, 233 F.3d 880, 883 (5th Cir. 2000).  The party invoking federal jurisdiction bears the burden to prove that jurisdiction exists and that removal was proper.  *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

### B.    OCSLA jurisdiction exists over Tauriac's unseaworthiness and maintenance-and-cure claims.

The notice of removal invoked federal question jurisdiction under OCSLA, 43 U.S.C. § 1349(b)(1).  *See* Dkt. 1 at 1-2.  Because Defendants bear the burden to show that removal was proper, that is where the analysis begins.

OCSLA provides, in relevant part, that federal courts have jurisdiction "of cases and controversies arising out of, or in connection with ... any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf ...."  43 U.S.C. §1349(b)(1); *see also In re Deepwater Horizon*, 745 F.3d 157, 163 (5th Cir. 2014) (quoting the statute).  "The Fifth Circuit has interpreted this language as straightforward and broad."  *Deepwater Horizon*, 745 F.3d at 163 (citing *Tenn. Gas Pipeline v. Hou. Cas. Ins. Co.,* 87 F.3d 150, 154 (5th Cir. 1996)).  Because this statute vests the district courts with jurisdiction, OCSLA can apply even if a plaintiff does not expressly invoke it.  *See id.*

"To determine whether a cause of action arises under OCSLA and therefore is within the subject matter jurisdiction of the federal courts, the Fifth Circuit applies a 'but for' test." *McDonald v. Enermech Mech. Servs., Inc.*, 2023 WL 4109786, at *3 (S.D. Tex. May 30, 2023) (citing *Deepwater Horizon*, 745 F.3d at 163), *adopted by* 2023 WL 4110090 (S.D. Tex. June 20, 2023).  This test asks "whether (1) the activities that caused the injury constituted an 'operation' 'conducted on the outer Continental Shelf' that involved the exploration and production of minerals, and (2) the case 'arises out of, or in connection with' the operation."  *See Deepwater Horizon*, 745 F.3d at 163 (quoting *EP Operating Ltd. P'ship v. Placid Oil Co.,* 26 F.3d 563, 568-69 (5th Cir. 1994)).

In the notice of removal, ISS alleged that Tauriac's injuries "arise out of … offshore operations conducted on the outer Continental Shelf …." Dkt. 1 at 2.  ISS also submitted proof that Tauriac's work took place on the OCS and furthered its mineral development.  *See* Dkt. 19 at 10 (citing Dkt. 19-2 at 2, Declaration of Josh Pooler, Helix rig superintendent; Dkt. 19-3 at 2, Declaration of Steven Cole, Talos Director of Health, Safety, and Environmental).

As Defendants contend, Tauriac does not dispute that his alleged injury occurred in connection with mineral development on the Outer Continental Shelf.  *See id.*  Indeed, the petition states that Tauriac worked "as a well tester"

"in the Gulf of Mexico" on a vessel owned or operated by an energy company. *See* Dkt. 1-1 at 4. Those undisputed facts are sufficient to establish subject matter jurisdiction under OCSLA. *See McDonald*, 2023 WL 4109786, at *3 (relying on analogous contentions when finding that removal was proper); *see also Sam v. Laborde Marine, L.L.C.*, 2020 WL 59633, at *3 (S.D. Tex. Jan. 6, 2020) (citing *Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir. 1988)) ("A person employed to work on an OCS platform that furthers mineral development is engaged in an activity that satisfies [OCSLA's] but-for test.").

OCLSA provides a jurisdiction hook for claims governed by maritime law, which include claims for unseaworthiness and maintenance and cure. *See McDonald*, 2023 WL 4109786, at *2. General maritime claims may be removed to federal court if an independent basis for federal jurisdiction exists. *See id.* (citing *Barker v. Hercules Offshore, Inc.,* 713 F.3d 208, 220 (5th Cir. 2013)).

In this case, OSCLA supplies the basis for jurisdiction over Tauriac's unseaworthiness and maintenance-and-cure claims. This means the removal of this case was proper under 28 U.S.C. § 1441(c). *See id.* at *3-4 (finding removal of general maritime claims proper under § 1441(c)(1) because federal jurisdiction existed under OCSLA). Tauriac's motion to remand should be

denied with respect to his maritime claims for unseaworthiness and maintenance and cure.[2]

## C.    Jones Act and OCSLA "hybrid" cases

The existence of OCSLA jurisdiction over some of Tauriac's claims, however, does not conclusively foreclose his request to remand a different part of this case. Tauriac maintains that his negligence claims are governed by the Jones Act, and Jones Act claims generally cannot be removed.

The removal statute specifies how federal courts should address cases that have both (A) a federal claim and (B) a claim that is "not within the [court's] original or supplemental jurisdiction" or is otherwise "made nonremovable by statute ...." 28 U.S.C. § 1441(c)(1)(A)-(B). When a case with such a combination of claims has been removed, "the district court shall sever from the action" all claims over which the court lacks jurisdiction or are otherwise non-removable and remand them "to the State court from which the action was removed." *Id.* § 1441(c)(2). Under Tauriac's position, even if

---

[2] Tauriac's further contention that ISS's removal was procedurally improper for failure to obtain Talos Energy's consent is untimely raised and barred. *See* 28 U.S.C. § 1447(c) (30-day deadline to raise procedural defects in removal); Dkt. 1 (November 4, 2024 notice of removal); Dkt. 22 at 14-16 (Tauriac's January 16, 2025 reply raising consent issue, for the first time); *see also, e.g.*, *Pittman v. Pittman Co.*, 2015 WL 6674875, at *4 (S.D. Miss. Nov. 2, 2015) (rejecting similarly tardy challenge to defendant's consent to removal). In any event, ISS presented uncontroverted evidence that Talos consented to removal before the notice of removal was filed— despite Talos's position that it was not properly served. *See* Dkt. 30-1 at 2-4.

OCSLA confers jurisdiction over some of his claims, his Jones Act claims should be remanded.

Defendants, however, invoke an exception to the non-removability of Jones Act claims. This exception applies if the Jones Act allegations are "'fraudulently pleaded,' or pleaded where there is no possibility that the plaintiff can prove seaman status ...." *Santee v. Oceaneering Int'l, Inc.*, 110 F.4th 800, 805 (5th Cir. 2024) (citing *Hufnagel v. Omega Serv. Indus., Inc.*, 182 F.3d 340, 345 (5th Cir. 1999)). But the threshold for that exception is high. Remand is warranted unless, "resolving all disputed facts and ambiguities in current substantive law in plaintiff's favor, the court determines that the plaintiff has *no possibility* of establishing a Jones Act claim on the merits." *See id.* (quotation omitted).

The Court is not persuaded that it should retain jurisdiction over the Jones Act claims. There are at least two reasons why.

First, Defendants do not acknowledge a line of authority addressing hybrid OCSLA and Jones Act cases, where courts have chosen to sever and remand the Jones Act claims without piercing the pleadings to reach their merits. In these "hybrid" cases, courts consider the usual rationale for piercing the pleadings: to prevent a plaintiff from "frustrat[ing] federal jurisdiction" by pleading claims that are "baseless in law and in fact ...." *Lackey v. Atl. Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993); *see also, e.g., Landerman v.*

15

*Tarpon Operating and Development, L.L.C.,* 19 F. Supp. 3d 678, 685 (E.D. La. May 1, 2014) (citing *Lackey*). In a "hybrid" case, with a federal claim that is removable under Section 1441(c), the additional Jones Act claim cannot frustrate federal jurisdiction, regardless of its validity. *See Landerman*, 19 F. Supp. 3d at 685. In other words, OCSLA jurisdiction over one claim establishes federal jurisdiction, notwithstanding the general non-removability of the companion Jones Act claim. *See id.*

Thus, in keeping with Section 1441(c)'s mandatory language, many courts facing "hybrid" cases sever and remand the Jones Act claim without reaching the merits, while retaining jurisdiction over the OCSLA claims. *See id.* (quoting 28 U.S.C. § 1441(c)) (The district court "*shall* sever from the action [the claims made nonremovable by statute] and *shall* remand the severed claims to the State court ...."). Because Tauriac has asserted Jones Act negligence claims alongside general maritime claims that arise under OCSLA, this line of cases supports severing and remanding his Jones Act claims without determining their validity. *See, e.g., Peralta v. Supreme Offshore Servs., Inc.,* 767 F. Supp. 3d 348, 356-57 (E.D. La. 2025); *Landerman*, 19 F. Supp. 3d at 685; *Perry v. Halliburton Energy Servs., Inc.*, 2024 WL 3541601, at *8-9 (S.D. Tex. June 21, 2024), *adopted by* 2024 WL 3543451 (S.D. Tex. July 23, 2024); *McDonald*, 2023 WL 4109786, at *4-5; *Ashcraft v. Cantium, LLC*, 2022 WL 4581053, at *6-7 (M.D. La. Sept. 7, 2022), *adopted by* 2022 WL

4543187 (M.D. La. Sept. 28, 2022); *Hsieh v. Apache Deepwater, LLC*, 2019 WL
9899512, at *4 (M.D. La. Aug. 23, 2019).

Second, Defendants' evidence does not foreclose the possibility of
Tauriac's seaman status even if it were considered. As noted, Defendants bear
a heavy burden to prove the Jones Act allegations were fraudulent by showing
"no possibility" that the Jones Act applies. *See Lackey*, 990 F.2d at 207. To
make this determination, generally "the court should conduct a Rule 12(b)(6)-
type analysis ...." *Gates v. Am. Bridge Co.*, 461 F. Supp. 3d 508, 513 (S.D. Tex.
2020) (citing *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016)). "If a
plaintiff can survive a Rule 12(b)(6) challenge, the Jones Act claim is not
improper." *Id.* But "the court may instead pierce the pleadings and conduct a
[summary-judgment-type] inquiry," to allow the court "to identify the presence
of discrete and undisputed facts that would preclude the plaintiff's recovery."
*Id.* (quotation omitted). "A district court has discretion to decide whether to
pierce the pleadings." *Id.*

"The Supreme Court has established a two-prong test to determine
whether a party is a seaman under the Jones Act." *Santee*, 110 F.4th at 805
(citing *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 354-55 (1991)). Those
requirements are "(1) the plaintiff's duties must contribute to the function or
mission of the vessel, and (2) the plaintiff must have a connection to the vessel
or fleet of vessels that is substantial in duration and nature." *Id.* The Fifth

Circuit has enumerated additional factors under the "substantial connection" prong: "(1) whether the plaintiff is subject to the perils of the sea, (2) whether the plaintiff owes his allegiance to the vessel, rather than simply to a shoreside employer, (3) whether the plaintiff's work is sea-based or involves seagoing activity, and (4) whether the plaintiff's assignment to [the] vessel is limited to a discrete task after which [his] connection to the vessel ends." *Id.* (citing *Sanchez v. Smart Fabricators of Tex., L.L.C.*, 997 F.3d 564, 574 (5th Cir. 2021)) (quotations omitted).

As to the first prong, Defendants do not challenge whether Tauriac's duties contributed to the function or mission of the vessel. *See* Dkt. 1 at 2; Dkt. 12 at 14; Dkt. 19 at 11. Nor do they contest whether he was subjected to the perils of the sea. Instead, they argue that his connection to the *Q5000* was not substantial in duration and nature by challenging his allegiance to the vessel, the seagoing nature of his work, and his assignment to the vessel for anything more than a discrete, limited task. *See* Dkt. 19 at 11-13; Dkt. 30 at 4-5.

According to Defendants, Tauriac owed his allegiance to ISS, a shoreside employer, rather than to the vessel. *See* Dkt. 19 at 11-12; Dkt. 30 at 4-5. They submitted evidence indicating that Tauriac was employed by ISS and not Helix, the *Q5000*'s operator, and that he was part of Schlumberger's well testing crew and not the *Q5000* crew. *See* Dkt. 19-1 at 2 (Declaration of Joseph Scotto); Dkt. 19-2 at 2 (Declaration of Josh Pooler). But Tauriac maintains

18

that he worked under allegiance to the *Q5000*'s management, including Helix and Schlumberger. *See* Dkt. 12 at 17; Dkt. 22 at 26. Tauriac's evidence reflects that he took orders from Defendants' agents, including senior members of the *Q5000* crew, who managed the vessel's operations. Dkt. 22-7 at 2-4 (Declaration of John Tauriac).

At this stage, the Court "must resolve all disputed questions of fact from the pleadings and affidavits in favor of the plaintiff ...." *See Santee*, 110 F.4th at 808 (quotation omitted). The statements in Tauriac's pleadings and affidavit are "sufficient to create at least some fact issue that survives the limited summary determination in a fraudulent pleading inquiry." *Id.* at 807. Under that constrained inquiry, the Court cannot conclude that Tauriac has no possibility of proving he had sufficient allegiance to the vessel as opposed to an onshore employer.

ISS, though not Defendants Schlumberger and Helix, also challenged Tauriac's claims of multiple Jones Act employers. *See* Dkt. 30 at 5 (citing Dkt. 22 at 18 (Tauriac's reply brief, calling Talos his Jones Act employer); Dkt. 22-7 at 4 (Tauriac's affidavit, referencing his "employment with Talos Energy, Schlumberger, and ISS")). But that does not necessarily undermine Tauriac's seaman-status. "[A] maritime worker may possess allegiance to both a vessel on which he has had longstanding employment *and* his shoreside employer." *See Santee,* 110 F.4th at 807 (citing *Wilander*, 498 U.S. at 347) (seamen "owe

19

their allegiance to a vessel and not *solely* to a land-based employer") (emphasis altered).  It remains possible that Tauriac qualifies as a seaman even if one of his employers is the land-based ISS.

Defendants also challenge the seagoing nature of Tauriac's work.  *See* Dkt. 19 at 12.  But the decision they cite is not analogous.  In *Sanchez*, 997 F.3d at 567, 575, the plaintiff performed repairs on a jacked-up barge that was essentially docked.  Unsurprisingly, the Fifth Circuit held that plaintiff's work did not satisfy the nature test for seaman status.  *Id.*  In contrast, the parties agree that Tauriac's work occurred aboard "an offshore rig" and related to "well testing."  *See* Dkt. 19 at 12 (Defendants' response brief); Dkt. 19-2 at 2 (Declaration of Josh Pooler); Dkt. 19-3 at 2 (Declaration of Steven Cole); Dkt. 1-1 at 4 (Tauriac's original petition).  Tauriac describes his work "on the drill floor, using a sledgehammer to close valves" on the deck.  Dkt. 12 at 17.  This was not merely maintenance work, and it was not performed dockside but out at sea.  Dkt. 22-7 at 3-4 (Tauriac "worked, slept, and ate on the vessel" while it was "deployed in navigable waters").  That suggests sea-based work.  *See, e.g.*, *Santee*, 110 F.4th at 803, 806 (remote-operated vehicle driver providing visibility for offshore drilling crews did "sea-based" work); *Meaux v. Cooper Consolidated, LLC,* 477 F. Supp. 3d 515, 520, 526 (E.D. La. 2020) (deckhand working as flagger on crane barge was sea-based, because "[a]ll of his work was performed over water while in the service of a ... vessel).

Third, Defendants challenge Tauriac's work assignment as temporary and limited to a discrete task. They argue, with supporting affidavits, that Tauriac made a "guest appearance" for "a few days of work" as a "temporary contractor" with a six-month contract. Dkt. 19 at 12-13; *see also* Dkt. 19-1 at 2 (Declaration of Joseph Scotto). Defendants maintain that Tauriac did not travel with the *Q5000*, making his employment "transient specialized work" insufficient to qualify for seaman status. Dkt. 19 at 13.

Defendants' assertions are not conclusive. Tauriac's declaration attests that his employment was not intended to be short-term or temporary, and he would have remained on the vessel longer had he not been injured. *See* Dkt. 22-7 at 4; *see also* Dkt. 22 at 19, 21. And as Tauriac notes, Dkt. 22 at 21, ISS's copy of Tauriac's February 12, 2024 contract does not specify a duration, much less state that Tauriac would be transferred off the *Q5000* after a specific term expired. *See* Dkt. 30-2 at 3.

Defendants therefore have not negated the possibility that Tauriac's work was of a sufficient duration to substantiate his seaman status. *See, e.g.*, *Santee*, 110 F.4th at 807-08 (plaintiff whose affidavit stated his work was conducted for an indefinite period, and whose work record showed no short-term, transitory task assignment, was a seaman). Rather, the Court must resolve the conflicting facts in Tauriac's favor at this stage. *See id.* at 808. As a result, Tauriac's Jones Act claim should be severed and remanded.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Defendant Industrial Staffing Services, LLC's motion to dismiss (Dkt. 7) be **GRANTED**, and that Plaintiff John Tauriac's claims against it be **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

It is further **RECOMMENDED** that Tauriac's motion to remand (Dkt. 12) his other claims against Schlumberger Technology Corporation, Talos Energy, LLC, and Helix Energy Solutions Group, Inc. be **GRANTED IN PART** and **DENIED IN PART**. Tauriac's Jones Act claims for negligence against those remaining defendants should be **SEVERED** from this action and **REMANDED** to the 190th Judicial District Court of Harris County, Texas. In all other respects, the motion to remand should be **DENIED**.

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on June 18, 2025, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge

22